May it please the court. My name is Carrie Allen. I represent the appellate in this case, Timothy Thornton. We raised three issues in the brief here. Two of the issues were challenging these prior convictions. We challenged one of his prior convictions that was a Missouri suspended imposition of sentence for burglary from the year 2000. We challenged his Kansas burglary conviction from 1992. And then we also raised the issue that these other convictions are element of the offense and they must be found by a jury or expressly admitted pursuant to the Sixth Amendment. I'm limited in time here so I plan to stand on the arguments in the brief on the sixth. The question I'm most interested in is where was the box with these facts that tell us where it was. We don't know if it was in the building. No, there are no facts in any of the extrinsic documents that tell us where it was. No. The only facts really that we have are in the complaint? Yes. And that's one issue I want to raise. And that's specifically the case I want to talk about obviously. The government conceded the Missouri suspended imposition of sentence is not a conviction so I just want to focus on this Kansas burglary from 1992. When we looked at the extrinsic documents here, the only document that we had that was a charging document was the complaint. We did not have the information to which Mr. Thornton fled. So in Kansas it goes from complaint to information? Yes, that's my understanding. And specifically the documents provided, the journal entries is what they're called, specifically referred to the fact that he fled to an information. I have not practiced in Kansas but my understanding is that there's a charging document filed, it's a complaint, there will either be a preliminary hearing or an indictment and then an information is filed. So I think that really the court doesn't need to go past that. I believe the government has conceded that the statute is over broad and that the court would have to look at extrinsic documents to figure out what he was specifically convicted of. Those extrinsic documents were produced but they were unable to produce the document that he fled to. There's no question that an information can vary from the complaint greatly. Is your position that we need the information regardless of what these documents say or are you saying that well, we would prefer the information but you could accept this complaint but even then it's not enough? My position is that we would need the information no matter what. So it doesn't matter that, to your view, it doesn't matter we have these, you have to see the information? Yes, with a plea. I mean I think if there were jury instructions that would be different because we would know exactly what the jury found. But this is a plea situation and I think in a plea situation we absolutely have to see the document to which he pled. We cannot base, the court cannot base its decision on a complaint only. And I believe that the court doesn't really need to go past that. Once we realize that we don't have the information to which he pled, I think the analysis is over. We can't really look any further because we don't know what he pled to and we don't know which portion of this statute he violated. However, even if the complaint were sufficient, the complaint itself is written as if the statute were indivisible. The complaint lists all of the elements. It lists, I think it says, entering a building, mobile home, tent or other structure. And I think that the court here has to rely on the Supreme Court decision in DeKalb. I think that's very clearly the case that dictates what happens here. And DeKalb says two things that I think are very important. First, it tells us when we use this modified categorical approach and I concede this is an appropriate case to use it. We have a divisible statute. But the second thing that DeKalb says that I think is incredibly important is that we are not supposed to be doing a, it prohibits a fact-based analysis and specifically limits the analysis to the elements only. And so I think when we're looking at these extrinsic documents, what we're supposed to be looking for, according to DeKalb, is specifically what element is charged, what element he pled to. What DeKalb very clearly prohibits is looking at these facts and then trying to deduce, well, what do we believe these facts mean? You know, do these facts mean that this element applies or do these facts mean this element applies? And I believe that DeKalb prohibits that. And so what the argument should be here or what the analysis should be here shouldn't be, what is Bob's Conoco? Is it a building? The analysis should be, were the documents provided sufficient for the court to look at the elements, the elements only, and figure out what he was convicted of? And they weren't sufficient. First of all, because we don't have an information. And second of all, because even if we could rely on that complaint, even if he pled to the exact same wording as is written in the complaint, the complaint still lists all of the different elements. It doesn't actually do what I think the Supreme Court in DeKalb thought it would do, which is pick one and specify it. Well, the states don't charge cases based on how the federal recidivism statutes are written. I absolutely agree. So the courts sometimes have to see whether you can infer from the way the case is charged, whether the charging document narrowed the charge. And this Salu case says you can look at the charging document as a whole to see whether, even though they listed all of the ways you can commit burglary, the two-wit clause, for example, obviously narrows it. You say Salu is not good law after DeKalb? Yes. I believe that Salu is overruled by DeKalb. Justice Kagan wrote the opinion DeKalb, and I think she says almost 15 times that it cannot be a fact-based analysis. Well, it wouldn't be a fact-based analysis if you're just looking at the charging document, would it? I disagree. I think it would be a fact-based analysis because what we're looking at is Bob's Conoco, and we're trying to figure out what a Bob's Conoco is. And then in this particular case, we also have miscellaneous change, and we're trying to figure out where would that be stolen from? What if it had said building mobile home tent or other structure to wit the residence at 123 Jones Street? I believe that would still actually be under DeKalb. You don't think we could say that's a building? No, I don't believe you could, based on the opinion in DeKalb. And part of their reasoning is that they said that the meaning of these documents will often be uncertain. Statements of fact in them may be downright wrong. During plea hearings, the defendant may not wish to irk the prosecutor or court by squabbling about superfluous factual allegations. That's actually a part of the opinion in DeKalb. And so I think what the court is saying there is that sometimes these facts are incorrect, and that's why we can't have judicial fact-finding. We can only look at the elements. And I'd like to reserve just a few minutes for rebuttal, if possible. Thank you. Mr. Becker? Well, what's your response to those arguments? Good morning. My name is Paul Becker. I'm an assistant United States attorney. It's not a fact-based analysis when we're looking at what are known as the Shepard documents, those pleadings and other documents that the Supreme Court has said we can look to determine whether or not the prior conviction is a crime of violence for purposes of federal sentencing statutes. So as Judge Colleton said, the pleadings normally list all of the possibilities, building, residence, mobile home, a tent. Then it has to wit, he entered Bob's Conoco, or as Judge Colleton said, a residence at 123 Main Street. That is not a fact-based analysis because the Supreme Court has said the court may rely upon charging documents and plea documents in order to determine whether or not a prior conviction qualifies as a crime of violence. In these situations where there are multiple ways to violate the statute, some that are crimes of violence, some not. Well, suppose you're right about that. She says there's still two more problems here. One is we don't have the actual ambiguous because Bob's Conoco could be a tent, apparently. It could be a sales tent or something, she says. What do you say to those two? Or a gas pump by itself. Or the awning over the gas pump, I believe the argument was. Excuse me. First, we don't have the information. We get these packages of old convictions and when you compare the judgment and the plea document, in the plea document it sets forth that he waives the reading of the information and then he pleads guilty to the specific counts. And those specific counts, I believe one through seven, exactly track the seven charges in the complaint. With the first being the attempt to set fire to the ball of twine, the world's largest ball of twine, all the way through the end of that complaint where he was charged with the newspaper boxes and the theft of lights from the airport, the blue lights. So when you look at the judgment, the plea document, and the complaint, they exactly track not just in the number of counts but the statutes that are being violated. And then in the judgment, the sentence on each count and the restitution amounts to the various entities that correspond to the charges in the complaint. I believe that's sufficient for the court, for the district court, to rely on as what charges he specifically pled guilty to. Rely on what? Pardon me? That's, all of that is sufficient for the district court to rely on what? That count two of the information was the same as count two of the complaint. Oh, you want to, you think the judge can infer that the information also said to wit Bob's Conoco? Correct. I mean, there's no reason to believe that the information charging the same statutory provision, burglary in violation of Kansas statute, would be worded any differently or better than the complaint. The second question, Judge, you know, can we, can the district court find by a preponderance that it was Bob's Conoco the best, and swallowed. Bob's Conoco was a building. That's the question. Was a building, right. And at the sentencing hearing, the defense counsel said, you know, so my point, Judge, had it been a building, this is at page 12, had it been a gas station, why not just put building, Bob's Conoco, a building? The charging document doesn't say that in the court response, because everybody in the county knows what Bob's Conoco is, right? And that is the sort of common sense approach that Swallow said, you can engage in, in looking at all of the information in the pleading documents to determine, is it a, is it a tent? Is it a he argued, and that was my case as well, actually, it's still possible he burglarized a sales tent rather than a building. But the preponderance of the evidence simply means it is more likely than not that an event occurred. The government, the standard does not require the government to eliminate every plausible scenario. And as Judge Collinson said, when the state charges these things, they're not thinking about what consequences down the road it'll have for federal sentencing purposes. I believe here that the charging documents in the plea document and the sentencing document are sufficient, were sufficient for the district court to determine that it was a burglary of a building. When you go back to DeChamps, it's really this divisible, non-divisible statute. DeChamps, when you look at that case, the California statute didn't charge the generic burglary that the Supreme Court found in Taylor. There was no element in that case, in the California statute, of unlawful entry. And that's the starting point for the Supreme Court there, that it doesn't, you don't divide it because it never did have the element necessary that the Supreme Court said in Taylor for generic burglary. So then, is it a, is this particular Kansas statute a divisible or non-divisible statute? It clearly is a divisible statute. It's in line with all the other cases post DeChamps that are burglaries that allege various, the statute alleges various ways that the, that it's violated. Some crimes of violence, some not. We wouldn't have this line of cases if we didn't have some ways to violate the statute that the and some not, such as the 10th and so forth. So let me go back to the complaint question for a minute. Is there a reason, was the information available? We did not receive it. You didn't receive it, but if there were a rule of law that said you've got to have the document to which the person pleaded guilty, could the U.S. attorneys get the charging documents? Are they retained, do you know, by the state courts? We request through the agency, ATF in this case, the prior convictions from the local county clerk's office and we- This is what came back. This is what we get. I mean, at that point, if I'd realized, hey, this said he pled to an information. We don't have the information. We certainly could have gone back to the clerk's and said, we need the information. And I'm confident they would say, we gave you what we have. So you infer from this that the information isn't available anymore or the county would have sent it? Correct. I mean, I don't see any reason why when we, if you look at Exhibit 1, it starts out with a violation of probation on that particular conviction and then goes back to the all of the relevant documents for that case except the information. If we do look at the complaint and look at the whole thing, what are the facts that you think support the conclusion that this is a building? Well, first, when it alleges count and its unlawful authority, without authority, enter and remain within a building, mobile tent, or other structure to wit, Bob's Conoco, I think you can take that as a common meaning of it's a gas station. So you think it's enough to say Bob's Conoco, that's a building? Correct. What if when you then start looking at its miscellaneous change, it, I guess we're assuming that the newspaper boxes are also there, that are often outside? Granted. In your view, that doesn't modify whether or not Bob's Conoco in this particular context is a building? I think it's a factor to consider, but when you look at the restitution amount, there was, I believe, a restitution of $45 to Bob's Conoco, and I would think that that would be for a theft of miscellaneous change from the building of Bob's Conoco. Were the newspaper boxes at Bob's Conoco? I don't know, Judge. No. You know, when we have, if you had... We don't know. They might have been out on the street corner or something. It could have been, because this has a variety of crimes alleged. It has the ball of twine, it has the airport lights, it has... There's a little crime spree in... In western Kansas, yes. Mr. Thornton. But you're saying you don't... We did not get the police reports, and frankly, under Shepard, we couldn't consider them anyway. So if there are no further questions, I ask you to affirm the sentence of the district court. Thank you. Ms. Allen. The first thing I'd like to address that the court had asked about was the difference between the complaint and information. Again, I really think that the analysis ends there. It is a huge leap of faith to assume that the information is identical to the complaint. I think we see frequently that we have a preliminary hearing, or you have a grand jury, and that different... The allegations change to some extent. And so it is entirely realistic in this case that the information may have said something completely different. It may not have even said Bob's Conoco. I don't know. We don't know. And... Well, it was the same seven charges to which he pleaded guilty, right? Yes, I agree. So I don't know if it was completely different. It seems unlikely it would be completely different. No, I'm not by any means saying that it would be a completely different charge. What did you mean by completely different? Completely different wording, as far as perhaps it could have said a car wash owned by Bob's Conoco. It may have specified a particular element. We don't know. My only argument there is that it's a huge leap of faith to assume that the wording of the complaint and the wording of what he pled to are the same, are identical. And I don't think that we can use that complaint and rely on that complaint to figure out which crime he was actually convicted of then. And I do want to point out that it may not have been the government's fault that there was no in Kansas. That said, the government still has the burden. And if they cannot produce the document to which he pled, where we could actually get the information of what he was convicted of, then I think the analysis fails. And if there are no further questions by the court, we would ask you to find there's insufficient evidence to determine that his Kansas conviction constituted a violent felony pursuant to the Armed Career Criminal Act. Thank you very much. Okay.